## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

FEDERAL NATIONAL MORTGAGE ASSOCIATION )

Plaintiff, )

                )    **CIVIL ACTION**

v.                   )    **CASE NO.**

JOSHUA BRUNO, an individual )

                )    **JUDGE**

Defendant. )

                )    **MAGISTRATE JUDGE**

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Federal National Mortgage Association d/b/a Fannie Mae ("Fannie Mae"), acting by and through certain endorsements from Greystone Servicing Corporation ("Greystone"), and for its Complaint against Defendant, Joshua Bruno, avers as follows:

1.

Plaintiff Fannie Mae is a government-sponsored enterprise chartered by Congress, organized and existing under the laws of the United States, with its principal office in Washington, D.C. Fannie Mae is deemed a citizen of the District of Columbia for jurisdictional purposes in civil cases. 12 U.S.C . § 1717(a)(2)(B).

2.

Made Defendant herein is Joshua Bruno ("Bruno" or "Defendant"), a person of the full age of majority and a citizen of the State of Louisiana, who is, upon information and belief, domiciled

1

in Orleans Parish. Bruno is a guarantor of the Notes and Loan Documents (both as defined herein) that are the subject of this lawsuit and of separate foreclosure actions of certain immovable properties bearing the following municipal addresses: 2200 Westbend Parkway, New Orleans, Louisiana 70114; 147 Carondelet Street, Suite 1137, New Orleans, Louisiana 70310; 2309 6th Street, New Orleans, Louisiana 70115; 2817 South Liberty Street, New Orleans, Louisiana 70115; 2316 Washington Avenue, New Orleans, Louisiana 70115; and 1039 Reverend Richard Wilson Dr., Kenner, LA 70062.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of the District of Columbia, and Defendant is a citizen of Louisiana.

4.

Venue for this action is proper in this Court pursuant to 28 U.S.C. §1391(a), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district and the properties that secured the Notes that are the subject of this lawsuit and are the subject of separate foreclosure actions, are situated within this judicial district at the municipal addresses of 2200 Westbend Parkway, New Orleans, Louisiana 70114; 147 Carondelet Street, Suite 1137, New Orleans, Louisiana 70310; 2309 6th Street, New Orleans, Louisiana 70115; 2817 South Liberty Street, New Orleans, Louisiana 70115; 2316 Washington Avenue, New Orleans,

Louisiana 70115; and 1039 Revered Richard Wilson Dr., Kenner, LA 70062. Furthermore, there are four separate Bankruptcy Actions (as defined herein) pending in the United States Bankruptcy Court for the Eastern District of Louisiana that form the basis for the instant action against the Defendant.

## BACKGROUND FACTS

5.

The instant action against Defendant concerns his personal liability for indebtedness due under four separate loan transactions. The provisions and circumstances of the loan transactions giving rise to Defendant's personal liability are similar, but, for ease of reference, the history of and Defendant's liability under each of the loan transactions will be discussed separately.

6.

### *The Cypress Park Transaction, The Default, And The Foreclosure Action*

On or about December 23, 2014, Greystone loaned $2,790,000.00 (the "Cypress Park Loan") to Cypress Park Apartments, LLC (the "Cypress Park Borrower") pursuant to the terms of a Multifamily Loan and Security Agreement (the "Cypress Park Loan Agreement").  A true and correct copy of the Cypress Park Loan Agreement is attached hereto as **Exhibit "1"**.

7.

The Cypress Park Loan is evidenced by that certain Multifamily Note (the "Cypress Park Note") dated as of December 23, 2014 in the face amount of $2,790,000.00 executed by Borrower, to the order of Greystone, which Cypress Park Note has been assigned and endorsed to Fannie Mae, herein so called, and secured by certain real property and improvements known as Cypress

3

Park Apartments.  A true and correct copy of the Cypress Park Note is attached to this Complaint as **Exhibit "2"** and incorporated herein by reference.

8.

The Cypress Park Note and Cypress Park Loan were secured by a Multifamily Mortgage, Assignment of Leases and Rents and Security Agreement, executed by Borrower, in favor of Greystone, as of December 23, 2014, in authentic act form before a Notary Public in the State of Louisiana (collectively, the "Cypress Park Security Instrument").  A copy of the Cypress Park Security Instrument, recorded on December 29, 2014 under Instrument #2014-52013, MIN# 1177093, in the mortgage records for Orleans Parish, is attached as **Exhibit "3"** and incorporated by reference.

9.

Pursuant to a Guaranty of Non-Recourse Obligations dated December 23, 2014 (the "Cypress Park Guaranty"), Joshua L. Bruno guaranteed certain obligations of Cypress Park Borrower under the Cypress Park Note and Cypress Park Loan.  A true and correct copy of the Cypress Park Guaranty is attached hereto as **Exhibit "4"**. "Cypress Park Loan Documents" shall mean all documents executed by Cypress Park Borrower in connection with the Cypress Park Loan (Fannie Mae Loan No. XXXXXX3795) including without limitation, the Cypress Park Loan Agreement, the Cypress Park Note, the Cypress Park Security Instrument, the Cypress Park Guaranty and other Cypress Park Loan Documents.

4

10.

Greystone assigned the Cypress Park Security Instrument to Fannie Mae pursuant to that certain Assignment of Multifamily Mortgage, Assignment of Leases and Rent and Security Agreement dated as of December 23, 2014, executed by Greystone and recorded under NA# 2014-52014 in the office of the Clerk of Court of Orleans Parish, Louisiana (the "Cypress Park Mortgage Assignment"). A copy of the Cypress Park Mortgage Assignment is attached as **Exhibit "5"** and incorporated by reference. Greystone also endorsed the Note and assigned the Cypress Park Loan Agreement, Cypress Park Guaranty, and other Cypress Park Loan Documents to Fannie Mae pursuant to an Assignment of Collateral Agreements and Other Loan Documents ("Cypress Park Collateral Agreement Assignment"), attached hereto as **Exhibit "6"**. Fannie Mae is the current owner and holder of the Cypress Park Loan and all other Cypress Park Loan Documents and is entitled to enforce all provisions thereof.

11.

In the Cypress Park Loan Documents, Cypress Park Borrower agreed to make monthly debt service installments in the amount of the applicable Monthly Debt Service Payment (as defined in the Cypress Park Loan Documents). *See* Exhibit 1, Section 2.02(a)(3).

12.

A default occurred under the Cypress Park Loan Agreement when Cypress Park Borrower failed to make the required monthly payments.

13.

At Cypress Park Borrower's request and pursuant to Cypress Park Borrower's representation that it was experiencing financial hardship due to the COVID-19 health crisis, Cypress Park Borrower and Fannie Mae, through its servicer, Greystone, entered into that certain Forbearance and Non-Waiver Agreement dated April 27, 2020 (the "Cypress Park Forbearance Agreement").

14.

The Cypress Park Forbearance Agreement provided that, as a result of hardship that Cypress Park Borrower represented it had undergone due to the COVID-19 health crisis, Fannie Mae would forbear exercising its rights under the Cypress Park Loan Documents through June 30, 2020 (the "Cypress Park Forbearance Expiration Date") due to Cypress Park Borrower's failure to make payments required under the Cypress Park Loan Documents.

15.

On July 14, 2020, and pursuant to Cypress Park Borrower's representation that it continued to face financial hardship due to the COVID-19 health crisis, Fannie Mae, through its servicer, Greystone, agreed to extend the Cypress Park Forbearance Expiration Date through September 30, 2020 (the "Cypress Park Extended Forbearance Expiration Date") by Cypress Park Borrower's execution of that certain Forbearance and Non-Waiver Agreement (the "Cypress Park Extension Agreement") dated July 14, 2020. A copy of the Cypress Park Extension Agreement is attached

6

hereto as **Exhibit "7"**.

16.

The Cypress Park Extension Agreement provided the following:

Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents.

17.

Despite the Cypress Park Extended Forbearance Expiration Date, Cypress Park Borrower failed to make the required monthly debt service installments as required under the Cypress Park Loan Documents or otherwise comply with its obligations under the Cypress Park Extension Agreement.

18.

As a result of Cypress Park Borrower's failure to commence making monthly payments after the Cypress Park Extended Forbearance Expiration Date, an Event of Default (as defined in the Cypress Park Loan Documents) has occurred pursuant to Section 14.01(a) of the Cypress Park Loan Agreement.

19.

Upon an event of default, the Cypress Park Note and Cypress Park Security Instrument provide that Fannie Mae may accelerate the Cypress Park Note, declaring all of the indebtedness

to be immediately due and payable.  *See* Exhibit 1 at Section 14.02(a); *see* Exhibit 3 at Section 5(a).

20.

As a result of the Event of Default, and pursuant to the terms of the Cypress Park Loan Documents, Fannie Mae sent a default and acceleration letter to Cypress Park Borrower and Bruno dated January 8, 2021 (the "Cypress Park Default and Acceleration Letter"), whereby Fannie Mae provided notice to the Cypress Park Borrower that the maturity date of the Cypress Park Note was accelerated and demanded the immediate payment in full of the entire unpaid principal balance of the Cypress Park Note, plus accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. A copy of the Cypress Park Default and Acceleration Letter is attached hereto as **Exhibit "8"**.

21.

In the Cypress Park Default and Acceleration Letter, Fannie Mae also informed Cypress Park Borrower that its license to collect rents has terminated.

22.

At Cypress Park Borrower's request to engage in a potential workout or restructuring of the Cypress Park Loan, on February 5, 2021, Fannie Mae sent a pre-negotiation letter to Cypress Park Borrower (the "Cypress Park PNL"), which was executed by Cypress Park Borrower on February 9, 2021. A copy of the Cypress Park PNL is attached hereto as **Exhibit "9"**.

23.

Through the Cypress Park PNL, Fannie Mae requested certain documentation from

8

Cypress Park Borrower and reiterated that the Cypress Park Loan was in default, had been accelerated, and that Fannie Mae reserved all of its right to pursue its remedies under the Cypress Park Loan Documents, including, at Fannie Mae's sole and absolute discretion, the right to foreclose.

24.

Furthermore, by execution of the Cypress Park PNL, Cypress Park Borrower acknowledged that the Cypress Park Loan was in default, that the Cypress Park Loan had been properly accelerated, and waived all claims and defenses to Fannie Mae's rights and remedies under the Cypress Park Loan Documents. *See*, Exhibit 9, ¶¶ 3 and 7.

25.

Because of Borrower's Default and consistent with Fannie Mae's rights under the Loan Documents as reserved and reiterated in the PNL, Fannie Mae instituted foreclosure proceedings by filing its Verified Petition for Executory Process (the "Cypress Park Foreclosure Petition") in Civil District Court for the Parish of Orleans in the action styled: *Federal National Mortgage Association versus Cypress Park Apartments II, LLC,*; Case No. 2021-03007; Division "F" (the "Cypress Park Foreclosure Action"). A copy of the Cypress Park Foreclosure Petition (without accompanying exhibits) is attached hereto as **Exhibit "10"**.

26.

### *The Oakmont Loan Transaction, The Default, And The Foreclosure Action*

On or about March 27, 2018, Greystone loaned $22,150,000.00 (the "Westbank Holdings Loan") to Westbank Holdings, LLC ("Westbank Holdings Borrower" pursuant to the terms of a

Multifamily Loan and Security Agreement (the "Westbank Holdings Loan Agreement").  A true and correct copy of the Westbank Holdings Loan Agreement is attached hereto as **Exhibit "11"**.

27.

The Westbank Holdings Loan is evidenced by that certain Multifamily Note (the "Westbank Holdings Note") dated as of March 27, 2018 in the face amount of $22,150,000.00 executed by Westbank Holdings Borrower, to the order of Greystone, which Westbank Holdings Note has been assigned and endorsed to Fannie Mae, herein so called, and secured by certain real property and improvements known as Oakmont Apartments.  A true and correct copy of the Westbank Holdings Note is attached as **Exhibit "12"** and by reference.

28.

The Westbank Holdings Note and Westbank Holdings Loan were secured by a Multifamily Mortgage, Assignment of Leases and Rents and Security Agreement, executed by Westbank Holdings Borrower, in favor of Greystone, as of March 27, 2018, in authentic act form before a Notary Public in the State of Louisiana (collectively, the "Westbank Holdings Security Instrument"). A copy of the Westbank Holdings Security Instrument, recorded on March 28, 2018 as Instrument #2018-10598, MIN# 1270504, in the mortgage records for Orleans Parish, is attached to hereto as **Exhibit "13"** and incorporated herein by reference.

29.

Pursuant to a Guaranty of Non-Recourse Obligations dated March 27, 2018 (the "Westbank Holdings Guaranty"), Joshua L. Bruno guaranteed certain obligations of Borrower under the Westbank Holdings Note and Westbank Holdings Loan.  A true and correct copy of the Westbank

10

Holdings Guaranty is attached hereto as **Exhibit "14"**. "Westbank Holdings Loan Documents" shall mean all documents executed by Westbank Holdings Borrower in connection with the Westbank Holdings Loan (Fannie Mae Loan No. XXXXXX4927) including without limitation, the Westbank Holdings Loan Agreement, the Westbank Holdings Note, the Westbank Holdings Security Instrument, the Westbank Holdings Guaranty and other Westbank Holdings Loan Documents.

30.

Greystone assigned the Westbank Holdings Security Instrument to Fannie Mae pursuant to that certain Assignment of Multifamily Mortgage, Assignment of Leases and Rent and Security Agreement dated as of March 27, 2018, executed by Greystone and recorded on March 28, 2018 under Instrument# 2018-10599, MIN # 1270505 in the office of the Clerk of Court of Orleans Parish, Louisiana ("Westbank Holdings Mortgage Assignment"). A copy of the Westbank Holdings Mortgage Assignment is attached as **Exhibit "15"** and incorporated by reference. Greystone also endorsed the Note and assigned the Loan Agreement, Guaranty, and other Loan Documents to Fannie Mae pursuant to an Assignment of Collateral Agreements and Other Loan Documents ("Westbank Holdings Collateral Agreement Assignment"), attached hereto as **Exhibit "16"**. Fannie Mae is the current owner and holder of the Westbank Holdings Loan and all other Westbank Holdings Loan Documents and is entitled to enforce all provisions thereof.

31.

In the Westbank Holdings Loan Documents, Westbank Holdings Borrower agreed to make monthly debt service installments in the amount of the applicable Monthly Debt Service Payment (as defined in the Westbank Holdings Loan Documents). *See* Exhibit 11, Section 2.02(a)(3).

32.

A default occurred under the Westbank Holdings Loan Agreement when Westbank Holdings Borrower failed to make the required monthly payments.

33.

At Westbank Holdings Borrower's request and pursuant to Westbank Holdings Borrower's representation that it was experiencing financial hardship due to the COVID-19 health crisis, Westbank Holdings Borrower and Fannie Mae, through its servicer, Greystone, entered into that certain Forbearance and Non-Waiver Agreement with an effective date of April 30, 2020 (the "Westbank Holdings Forbearance Agreement").

34.

The Westbank Holdings Forbearance Agreement provided that, as a result of hardship that Borrower represented it had undergone due to the COVID-19 health crisis, Fannie Mae would forbear exercising its rights under the Loan Documents through June 30, 2020 (the "Westbank Holdings Forbearance Expiration Date") due to Borrower's failure to make payments required under the Westbank Holdings Loan Documents.

35.

On July 14, 2020, and pursuant to Westbank Holdings Borrower's representation that it continued to face financial hardship due to the COVID-19 health crisis, Fannie Mae, through its servicer, Greystone, agreed to extend the Westbank Holdings Forbearance Expiration Date through September 30, 2020 (the "Westbank Holdings Extended Forbearance Expiration Date") by Borrower's execution of that certain Forbearance and Non-Waiver Agreement (the "Westbank Holdings Extension Agreement") dated July 14, 2020. A copy of the Westbank Holdings Extension Agreement is attached hereto as **Exhibit "17"**

36.

The Westbank Holdings Extension Agreement provided the following:

> Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents.

37.

Despite the Westbank Holdings Extended Forbearance Expiration Date, Westbank Holdings Borrower failed to make the required monthly debt service installments as required under the Westbank Holdings Loan Documents or otherwise comply with its obligations under the Westbank Holdings Extension Agreement.

38.

As a result of Westbank Holdings Borrower's failure to commence making monthly

payments after the Westbank Holdings Extended Forbearance Expiration Date, an Event of Default (as defined in the Westbank Holdings Loan Documents) occurred pursuant to Section 14.01(a) of the Westbank Holdings Loan Agreement.

39.

Upon an event of default, the Westbank Holdings Note and Westbank Holdings Security Instrument provide that Fannie Mae may accelerate the Westbank Holdings Note, declaring all of the indebtedness to be immediately due and payable. *See* Exhibit 12 at Section 4; *see* Exhibit 13 at Section 5(a).

40.

As a result of this default, and pursuant to the terms of the Westbank Holdings Loan Documents, Fannie Mae sent a default and acceleration letter to Westbank Holdings Borrower and Bruno dated January 8, 2021 (the "Westbank Holdings Default and Acceleration Letter"), whereby Fannie Mae provided notice to the Westbank Holdings Borrower that the maturity date of the Westbank Holdings Note was accelerated and demanded the immediate payment in full of the entire unpaid principal balance of the Westbank Holdings Note, plus accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. A copy of the Westbank Holdings Default and Acceleration Letter is attached hereto as **Exhibit "18"**.

41.

In the Westbank Holdings Default and Acceleration Letter, Fannie Mae also informed Westbank Holdings Borrower that its license to collect rents has terminated.

42.

At Westbank Holdings Borrower's request to engage in a potential workout or restructuring of the Loan, on February 5, 2021, Fannie Mae sent a pre-negotiation letter to Westbank Holdings Borrower (the "Westbank Holdings PNL"), which was executed by Westbank Holdings Borrower on February 9, 2021. A copy of the Westbank Holdings PNL is attached hereto as **Exhibit "19"**.

43.

Through the Westbank Holdings PNL, Fannie Mae requested certain documentation from Westbank Holdings Borrower and reiterated that the Westbank Holdings Loan was in default, had been accelerated, and that Fannie Mae reserved all of its right to pursue its remedies under the Westbank Holdings Loan Document, including, at Fannie Mae's sole and absolute discretion, the right to foreclose.

44.

Furthermore, by execution of the Westbank Holdings PNL, Westbank Holdings Borrower acknowledged that the Westbank Holdings Loan was in default, that the Westbank Holdings Loan had been properly accelerated, and waived all claims and defenses to Fannie Mae's rights and remedies under the Westbank Holdings Loan Documents. *See*, Exhibit 19, ¶¶ 3 and 7.

45.

Because of Westbank Holdings Borrower's default and consistent with Fannie Mae's rights under the Westbank Holdings Loan Documents as reserved and reiterated in the Westbank Holdings PNL, Fannie Mae instituted foreclosure proceedings by filing its Verified Petition for Executory Process (the "Westbank Holdings Foreclosure Petition") in Civil District Court for the

Parish of Orleans in the action styled: *Federal National Mortgage Association versus Westbank Holdings, LLC,*; Case No. 2021-03008; Division "M" (the "Westbank Holdings Foreclosure Action"). A copy of the Westbank Holdings Foreclosure Petition (without accompanying exhibits) is attached hereto as **Exhibit "20".**

46.

***The Forest Park Loan Transaction, The Default, And The Foreclosure Action***

On or about December 23, 2014, Greystone loaned $2,163,750.00 (the "Forest Park Loan") to Forest Park Apartments, LLC, Liberty Park Apartments, LLC, and Washington Place, L.L.C. (collectively, "Forest Park Borrower") pursuant to the terms of a Multifamily Loan and Security Agreement (the "Forest Park Loan Agreement"). A true and correct copy of the Forest Park Loan Agreement is attached hereto as **Exhibit "21"**.

47.

The Forest Park Loan is evidenced by that certain Multifamily Note (the "Forest Park Note") dated as of December 23, 2014 in the face amount of $2,163,750.00 executed by Forest Park Borrower, to the order of Greystone, which Note has been assigned and endorsed to Fannie Mae, herein so called, and secured by certain real property and improvements known as Forest Park Apartments, Liberty Park Apartments, and Washington Place. A true and correct copy of the Note is attached as **Exhibit "22"** and incorporated by reference.

48.

The Forest Park Note and Forest Park Loan were secured by a Multifamily Mortgage, Assignment of Leases and Rents and Security Agreement, executed by Borrowers, in favor of

16

Greystone, as of December 23, 2014, in authentic act form before a Notary Public in the State of Louisiana (collectively, the "Forest Park Security Instrument"). A copy of the Forest Park Security Instrument, recorded on December 29, 2014 under Instrument #2014-52015, MIN# 1177094, in the mortgage records for Orleans Parish, is attached as **Exhibit "23"** and incorporated by reference.

49.

Pursuant to a Guaranty of Non-Recourse Obligations dated December 23, 2014 (the "Forest Park Guaranty"), Bruno guaranteed certain obligations of Forest Park Borrower under the Forest Park Note and Forest Park Loan.  A true and correct copy of the Forest Park Guaranty is attached hereto as **Exhibit "24"**. "Forest Park Loan Documents" shall mean all documents executed by Borrowers in connection with the Forest Park Loan (Fannie Mae Loan No. XXXXXX3795) including without limitation, the Forest Park Loan Agreement, the Note, the Forest Park Security Instrument, the Forest Park Guaranty and other Forest Park Loan Documents.

50.

Greystone assigned the Forest Park Security Instrument to Fannie Mae pursuant to that certain Assignment of Multifamily Mortgage, Assignment of Leases and Rent and Security Agreement dated as of December 23, 2014, executed by Greystone and recorded under NA# 2014-52016 in the office of the Clerk of Court of Orleans Parish, Louisiana (the "Forest Park Mortgage Assignment"). A copy of the Forest Park Mortgage Assignment is attached as **Exhibit "25"** and incorporated by reference. Greystone also endorsed the Forest Park Note and assigned the Forest Park Loan Agreement, Forest Park Guaranty, and other loan documents to Fannie Mae pursuant

to an Assignment of Collateral Agreements and other Loan Documents (the "Forest Park Collateral Agreement Assignment"), attached hereto as **Exhibit "26"**.  Fannie Mae is the current owner and holder of the Forest Park Loan and all other Forest Park Loan Documents and is entitled to enforce all provisions thereof.

51.

In the Forest Park Loan Documents, Forest Park Borrower agreed to make monthly debt service installments in the amount of the applicable Monthly Debt Service Payment (as defined in the Forest Park Loan Documents). *See* Exhibit 21, Section 2.02(a)(3).

52.

A default occurred under the Forest Park Loan Agreement when Forest Park Borrower failed to make the required monthly payments.

53.

At Forest Park Borrower's request and pursuant to Forest Park Borrower's representation of financial hardship due to the COVID-19 health crisis, Forest Park Borrower and Fannie Mae, through its servicer, Greystone, entered into that certain Forbearance and Non-Waiver Agreement dated April 27, 2020 (the "Forest Park Forbearance Agreement").

54.

The Forest Park Forbearance Agreement provided that, as a result of hardship that Forest Park Borrower represented it had undergone due to the COVID-19 health crisis, Fannie Mae would forbear exercising its rights under the Forest Park Loan Documents through June 30, 2020 (the

"Forest Park Forbearance Expiration Date") due to Forest Park Borrower's failure to make payments required under the Forest Park Loan Documents.

55.

On July 14, 2020, and pursuant to Forest Park Borrower's representation of continued financial hardship due to the COVID-19 health crisis, Fannie Mae, through its servicer, Greystone, agreed to extend the Forest Park Forbearance Expiration Date through September 30, 2020 (the "Forest Park Extended Forbearance Expiration Date") by Forest Park Borrower's execution of that certain Forest Park Forbearance and Non-Waiver Agreement (the "Forest Park Extension Agreement") dated July 14, 2020. A copy of the Forest Park Extension Agreement is attached hereto as **Exhibit "27"**.

56.

The Forest Park Extension Agreement provided the following:

Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents.

57.

Despite the September 30, 2020 Forest Park Extended Forbearance Expiration Date, Forest Park Borrower failed to make the required monthly debt service installments as required under the Forest Park Loan Documents or otherwise comply with its obligations under the Forest Park

Extension Agreement.

58.

As a result of Forest Park Borrower's failure to commence making monthly payments after the Forest Park Extended Forbearance Expiration Date, an Event of Default (as defined in the Forest Park Loan Documents) occurred pursuant to Section 14.01(a) of the Forest Park Loan Agreement.

59.

Upon an event of default, the Forest Park Note and Forest Park Security Instrument provide that Fannie Mae may accelerate the Forest Park Note, declaring all of the indebtedness to be immediately due and payable. *See* Exhibit 22 at Section 4; *see* Exhibit 23 at Section 5(a).

60.

As a result of this default, and pursuant to the terms of the Forest Park Loan Documents, Fannie Mae sent a default and acceleration letter to Forest Park Borrower and Bruno dated January 8, 2021 (the "Forest Park Default and Acceleration Letter"), whereby Fannie Mae provided notice to the Forest Park Borrower that the maturity date of the Forest Park Note was accelerated and demanded the immediate payment in full of the entire unpaid principal balance of the Forest Park Note, plus accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. A copy of the Forest Park Default and Acceleration Letter is attached hereto as **Exhibit "28"**.

61.

In the Forest Park Default and Acceleration Letter, Fannie Mae also informed Forest Park Borrower that its license to collect rents has terminated.

20

62.

At Forest Park Borrower's request to engage in a potential workout or restructuring of the

Forest Park Loan, on February 5, 2021, Fannie Mae sent a pre-negotiation letter to Forest Park

Borrower (the "Forest Park PNL"), which was executed by Forest Park Borrower on February 9,

2021. A copy of the Forest Park PNL is attached hereto as **Exhibit "29"**.

63.

Through the Forest Park PNL, Fannie Mae requested certain documentation from Forest

Park Borrower and reiterated that the Forest Park Loan was in default, had been accelerated, and

that Fannie Mae reserved all of its right to pursue its remedies under the Forest Park Loan

Documents, including, at Fannie Mae's sole and absolute discretion, the right to foreclose.

64.

Furthermore, by execution of the Forest Park PNL, Forest Park Borrower acknowledged

that the Forest Park Loan was in default, that the Forest Park Loan had been properly accelerated,

and waived all claims and defenses to Fannie Mae's rights and remedies under the Forest Park

Loan Documents. *See*, Exhibit 29, ¶¶ 3 and 7.

65.

Because of Forest Park Borrower's Default and consistent with Fannie Mae's rights under

the Forest Park Loan Documents as reserved and reiterated in the Forest Park PNL, Fannie Mae

instituted foreclosure proceedings by filing its Verified Petition for Executory Process (the "Forest

Park Foreclosure Petition" in Civil District Court for the Parish of Orleans in the action styled:

*Federal National Mortgage Association versus Forest Park Apartments, LLC, Liberty Park*

*Apartments, LLC, and Washington Place, L.L.C.*; Case No. 2021-03010; Division "E" (the "Forest Park Foreclosure Action"). A copy of the Forest Park Foreclosure Petition (without accompanying exhibits) is attached hereto as **Exhibit "30"**.

66.

### *The Riverview Loan Transaction, The Default, And The Foreclosure Action*

On or about December 23, 2014, Greystone loaned $2,031,250.00 (the "Riverview Loan" and, collectively with the Cypress Park Loan, the Westbank Holdings Loan, and the Forest Park Loan, the "Loans" and each, individually, a "Loan") to Riverview Apartments, LLC ("Riverview Borrower" and, collectively with the Cypress Park Borrower, the Westbank Holdings Borrower, and the Forest Park Borrower, the "Borrowers" and each, individually, a "Borrower") pursuant to the terms of a Multifamily Loan and Security Agreement (the "Riverview Loan Agreement" and, collectively with the Cypress Park Loan Agreement, the Westbank Holdings Loan Agreement, and the Forest Park Agreement, the "Loan Agreements"). A true and correct copy of the Riverview Loan Agreement is attached hereto as **Exhibit "31"**.

67.

The Riverview Loan is evidenced by that certain Multifamily Note (the "Riverview Note" and, collectively with the Cypress Park Note, the Westbank Holdings Note, and the Forest Park Note, the "Notes" and each, individually, a "Note") dated as of December 23, 2014 in the face amount of $2,031,250.00 executed by Riverview Borrower, to the order of Greystone, which Riverview Note has been assigned and endorsed to Fannie Mae, herein so called, and secured by certain real property and improvements known as Riverview Apartments. A true and correct copy

of the Riverview Note is attached to this Complaint as **Exhibit "32"** and incorporated into this Complaint by reference.

68.

The Note and Loan were secured by a Multifamily Mortgage, Assignment of Leases and Rents and Security Agreement, executed by Borrower, in favor of Greystone, as of December 23, 2014, in authentic act form before a Notary Public in the State of Louisiana (collectively, the "Riverview Security Instrument"). A copy of the Riverview Security Instrument, recorded on December 29, 2014 as Instrument #11452968, in Book 4637, page 50 in the mortgage records for Jefferson Parish, is attached to this Petition as **Exhibit "33"** and incorporated into this Complaint by reference.

69.

Pursuant to a Guaranty of Non-Recourse Obligations dated December 23, 2014 (the "Riverview Guaranty" and, collectively with the Cypress Park Guaranty, the Westbank Holdings Guaranty, and the Forest Park Guaranty, the "Guarantees"), Joshua L. Bruno guaranteed certain obligations of Riverview Borrower under the Riverview Note and Riverview Loan. A true and correct copy of the Riverview Guaranty is attached hereto as **Exhibit "34"**. "Riverview Loan Documents" shall mean all documents executed by Riverview Borrower in connection with the Riverview Loan (Fannie Mae Loan No. XXXXXX3780) including, without limitation, the Riverview Loan Agreement, the Riverview Note, the Riverview Security Instrument, the Riverview Guaranty and other Riverview Loan Documents. The Riverview Loan Documents,

23

collectively with the Cypress Park Loan Documents, the Westbank Holdings Loan Documents, and the Forest Park Loan Documents are referred to as the "Loan Documents").

70.

Greystone assigned the Riverview Security Instrument to Fannie Mae pursuant to that certain Assignment of Multifamily Mortgage, Assignment of Leases and Rent and Security Agreement dated as of December 23, 2014, executed by Greystone and recorded as Instrument No. 11452969, in Book 4637, Page 51 in the mortgage records of Jefferson Parish, Louisiana (the "Riverview Mortgage Assignment"). A copy of the Riverview Mortgage Assignment is attached to this Petition as **Exhibit "35"** and incorporated into this Complaint by reference. Greystone also endorsed the Riverview Note and assigned the Riverview Loan Agreement, Riverview Guaranty, and other Riverview Loan Documents to Fannie Mae pursuant to an Assignment of Collateral Agreements and Loan Documents ("Riverview Collateral Agreement Assignment"), attached hereto as **Exhibit "36"**.  Fannie Mae is the current owner and holder of the Riverview Loan and all other Riverview Loan Documents and is entitled to enforce all provisions thereof.

71.

In the Riverview Loan Documents, Borrower agreed to make monthly debt service installments in the amount of the applicable Monthly Debt Service Payment (as defined in the Riverview Loan Documents). *See* Exhibit 31, Section 2.02(a)(3).

72.

A default occurred under the Riverview Loan Agreement when Riverview Borrower failed to make the required monthly payments.

24

73.

At Riverview Borrower's request and pursuant to Riverview Borrower's representation that it was experiencing financial hardship due to the COVID-19 health crisis, Riverview Borrower and Fannie Mae, through its servicer, Greystone, entered into that certain Forbearance and Non-Waiver Agreement dated April 27, 2020 (the "Riverview Forbearance Agreement").

74.

The Forbearance Agreement provided that, as a result of hardship that Riverview Borrower represented it had undergone due to the COVID-19 health crisis, Fannie Mae would forbear exercising its rights under the Riverview Loan Document through June 30, 2020 (the "Riverview Forbearance Expiration Date") due to Riverview Borrower's failure to make payments required under the Riverview Loan Documents.

75.

On July 14, 2020, and pursuant to Riverview Borrower's representation that it continued to face financial hardship due to the COVID-19 health crisis, Fannie Mae, through its servicer, Greystone, agreed to extend the Riverview Forbearance Expiration Date through September 30, 2020 (the "Riverview Extended Forbearance Expiration Date") by Riverview Borrower's execution of that certain Forbearance and Non-Waiver Agreement (the "Riverview Extension Agreement") dated July 14, 2020. A copy of the Riverview Extension Agreement is attached

hereto as **Exhibit "37"**.

76.

The Riverview Extension Agreement provided the following:

Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents.

77.

Despite the Extended Forbearance Expiration Date, Riverview Borrower failed to make the required monthly debt service installments as required under the Riverview Loan Documents or otherwise comply with its obligations under the Riverview Extension Agreement.

78.

As a result of Riverview Borrower's failure to commence making monthly payments after the Riverview Extended Forbearance Expiration Date, an Event of Default (as defined in the Riverview Loan Documents) has occurred pursuant to Section 14.01(a) of the Riverview Loan Agreement.

79.

Upon an event of default, the Riverview Note and Riverview Security Instrument provide that Fannie Mae may accelerate the Riverview Note, declaring all of the indebtedness to be immediately due and payable.  *See* Exhibit 32 at Section 14.02(a); *see* Exhibit 33 at Section 5(a).

80.

As a result of the Event of Default, and pursuant to the terms of the Riverview Loan Documents, Fannie Mae sent a default and acceleration letter to Riverview Borrower and Riverview Guarantor dated January 8, 2020 (the "Riverview Default and Acceleration Letter"), whereby Fannie Mae provided notice to Riverview Borrower that the maturity date of the Riverview Note was accelerated and demanded the immediate payment in full of the entire unpaid principal balance of the Riverview Note, plus accrued and unpaid interest thereon and the costs and attorneys' fees of Fannie Mae. A copy of the Riverview Default and Acceleration Letter is attached hereto as **Exhibit "38"**.

81.

In the Riverview Default and Acceleration Letter, Fannie Mae also informed Riverview Borrower that its license to collect rents has terminated.

82.

At Riverview Borrower's request to engage in a potential workout or restructuring of the Riverview Park Loan, on February 5, 2021, Fannie Mae sent a pre-negotiation letter to Riverview Park Borrower (the "Riverview PNL"), which was executed by Riverview Borrower on February 9, 2021. A copy of the Riverview PNL is attached hereto as **Exhibit "39"**.

83.

Through the Riverview PNL, Fannie Mae requested certain documentation from Riverview Borrower and reiterated that the Riverview Loan was in default, had been accelerated, and that Fannie Mae reserved all of its right to pursue its remedies under the Riverview Loan Documents,

including, at Fannie Mae's sole and absolute discretion, the right to foreclose.

84.

Furthermore, by execution of the Riverview PNL, Riverview Borrower acknowledged that the Riverview Loan was in default, that the Riverview Loan had been properly accelerated, and waived all claims and defenses to Fannie Mae's rights and remedies under the Riverview Loan Documents. *See*, Exhibit 39, ¶¶ 3 and 7.

85.

Because of Riverview Borrower's Default and consistent with Fannie Mae's rights under the Loan Documents as reserved and reiterated in the PNL, Fannie Mae instituted foreclosure proceedings by filing its Verified Petition for Executory Process (the "Riverview Foreclosure Petition") in Civil District Court for the Parish of Jefferson in the action styled: *Federal National Mortgage Association versus Riverview Apartments*; Case No. 816-400; Section "A" (the "Riverview Foreclosure Action" and, collectively with the Cypress Park Foreclosure Action, the Westbank Holdings Foreclosure Action, and the Forest Park Foreclosure Action, the "Foreclosure Actions"). A copy of the Riverview Foreclosure Petition (without accompanying exhibits) is attached hereto as **Exhibit "40".**

**CLAIMS UNDER GUARANTEES**

86.

**I.      Bankruptcy Event – All Loans**

While the Cypress Park Foreclosure Action,  the Westbank Holdings Foreclosure Action, and the Forest Park Foreclosure Actions were ongoing, on January 27, 2022, the Cypress Park

28

Borrower, the Westbank Holdings Borrower, and the Forest Park Borrower each initiated a separate, voluntary bankruptcy proceeding under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana in the matters styled as follows: *In re: Forest Park Apartments, LLC*; Chapter 11, Case No. 22-10085, Section "A"; *In re: Westbank Holdings, LLC*, Chapter 11, Case No. 22-10082, Section "A"; *In re: Forest Park Apartments, LLC*; Chapter 11, Case No. 22-10085, Section "A"; *In re: Washington Place, LLC*, Chapter 11, Case No. 22-10086, Section "A"; *In re: Liberty Park Apartments, LLC*, Chapter 11, Case No. 22-10084, Section "A".  Likewise, while the Riverview Foreclosure Action was ongoing, Riverview Borrower initiated a voluntary bankruptcy proceeding under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana in the matter styled *In re Riverview Apartments, LLC*, Chapter 11, Case No. 22-10176, Section "A" (collectively, the "Bankruptcy Actions").

87.

The Guarantees all provide the following identical provision:

Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender the full prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter of:

(a)      all amounts, obligations and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement

. . . .

(b)      all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its

rights under this Guaranty.[1]

88.

Section 3.02(b) of the Loan Agreements, in turn, provides that, upon the occurrence of certain specified events, the applicable Loan will be full recourse to the applicable Borrower and the Borrower will face personal liability for all of the indebtedness due under the applicable Note and corresponding loan documents.[2]

89.

Section 3.02(b)(3) of the Loan Agreements further specifies that one of the events that results in full recourse and personal liability for the entirety of the indebtedness to the applicable Borrower is the occurrence of a "Bankruptcy Event", which the Loan Agreements further define as, *inter alia*, "the commencement, filing or continuation of a voluntary case or proceeding under one or more of the Insolvency Laws."[3] *Id.*

90.

Thus, pursuant to the Guarantees, the institution of the Bankruptcy Actions constitutes a Bankruptcy Event, which results in Bruno's personal liability for the full amount of the indebtedness due under the Notes and Loan Documents.

---

[1] Exhibit 4, p. 2.; Exhibit 14, p. 2; Exhibit 24, p. 2; Exhibit 34, p. 2.
[2] Exhibit 1, p. 10; Exhibit 11, p. 10.
[3] The Loan Agreements define "Insolvency Laws" as follows: Insolvency Laws means the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq., together with any other federal or state law affecting debtor and creditor rights or relating to the bankruptcy, insolvency, reorganization, arrangement, moratorium, readjustment of debt, dissolution, liquidation or similar laws, proceedings, or equitable principles affecting enforcement of creditors' rights, as amended from time to time. *See, e.g.,* Exhibit 1, p. 6 of Schedule 1.

91.

Further pursuant to the Guarantees, the institution of the Bankruptcy Actions likewise renders Bruno personally liable for "all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under [the Guarantees]".

92.

## II.   Failure To Report Receipt Of Insurance Proceeds – Cypress Park Loan and Westbank Holdings Loan

Alternatively, Section 3.02(b)(5) of the Cypress Park and Westbank Holdings Loan Agreements provides an additional occurrence that results in full recourse and personal liability for the entirety of the indebtedness to the applicable Borrower as follows:

> fraud, written internal misrepresentation, or intentional material omission by Borrower, Guarantor, Key Principal, or any officer, director, partner, manager, member, shareholder, or trustee of Borrower, Guarantor, or Key Principal in connection with on-going financial or other reporting required by the Loan Documents, or any request for action or consent by Lender.[4]

93.

Among the Loan Agreements' reporting requirements, Section 9.02(b)(6) provides as follows:

> [Borrower shall] provide immediate written notice to Lender of Borrower's receipt of any insurance proceeds under any insurance policy required by Section 9.02(a)(1)(A) above and, if requested by Lender, deliver to Lender all of such

---

[4] Exhibit 1, p. 10; Exhibit 11, p. 10.

proceeds received by Borrower to be applied by Lender in accordance with this Article 9.[5]

94.

On information and belief, the Cypress Park and Westbank Holdings Borrower received the following payments representing insurance proceeds pursuant to insurance policies maintained on the appliable properties in conformity with  Section 9.02(a)(1)(A) of the applicable Loan Agreements:

1. Check No. 42972 dated October 13, 2021 in the amount of $100,000.00 payable to the order of Westbank Holdings, LLC and Fannie Mae ISAOA ATIMA c/o Greystone Servicing Company LLC;

2. Check No. 44815 dated October 29, 2021 in the amount of $400,000.00 payable to the order of Westbank Holdings, LLC and DBA Oakmont Apartments and Fannie Mae, its successors and or assigns ATIMA c o Greystone Servicing Co. LLC;

3. Check No. 42977 dated October 13, 2021 in the amount of $100,000.00 payable to the order of Cypress Park Apartments II, LLC, and Fannie Mae ISAO ATIMA c/o Greystone Servicing Company LLC; and

4. Check No. 44817 dated October 29, 2021 in the amount of $200,000.00 payable to the order of Cypress Park Apartments II, LLC payable to the order of Cypress Park Apartments II, LLC, and CN-0000804-04 (all locations): Fannie Mae ISAO ATIMA and c/o Greystone Servicing Company LLC (collectively, the "Checks"). A copy of the Checks is attached hereto, *in globo*, as **Exhibit "41"**.

95.

On information and belief, despite Fannie Mae being named as a payee on the Checks, both the Cypress Park Borrower and Westbank Holdings Borrower deposited and utilized the funds

---

[5] Exhibit 1, p. 41; Exhibit 11, p. 41; Exhibit 21, p. 41; Exhibit 31, p.2.

represented by the checks without providing any notice to Fannie Mae as required by the applicable Loan Agreements.

96.

Thus, in addition to the other grounds for Bruno's personal liability of these amounts, Bruno is personally liable for the full amount of the indebtedness due under the Cypress Park and Westbank Holdings Loan Documents.

97.

### III.     Allowance of Unpermitted Transfers – Cypress Park Loan

Alternatively, Section 3.02(b)(3) of the Cypress Park Loan Agreement provides that the applicable Borrower shall be personally liable for the repayment of all of the indebtedness due under the applicable Loan Agreement and corresponding Loan Documents upon the occurrence of a "[t]ransfer . . . that is not permitted under this Loan Agreement or any other Loan Document . . . ."[6]

98.

A "Transfer" is defined by the Cypress Park Loan Agreement as, *inter alia*, "a granting, pledging, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary, or by operation of law) . . . ."[7]

99.

---

[6] *See,* Exhibit 1, p. 10.
[7] Exhibit 1, Schedule 1, p. 14.

The below administrative judgments have been rendered and recorded against the Cypress Park Borrower, creating municipal liens which constitute unpermitted transfers under the Cypress Park Loan Documents. These unpermitted transfers therefore result in full recourse and personal liability for the entirety of the applicable indebtedness due from the Cypress Park Borrower under the Cypress Park Loan Agreement and associated Loan Documents.

- Administrative Judgment rendered in *City of New Orleans vs. Cypress Park Apartments II, LLC*; City of New Orleans Code Enforcement and Hearings Bureau; Case No. 13-09401-MPM; Recorded in the mortgage records of Orleans Parish on September 30, 2014 at Instrument No. 2014-38642
- Administrative Judgment rendered in *City of New Orleans vs. Cypress Park Apartments II, LLC*; City of New Orleans Code Enforcement and Hearings Bureau; Case No. 18-12484-MPM; Recorded in the mortgage records of Orleans Parish on April 30, 2019 at Instrument No. 2019-12680.

100.

In turn, pursuant to the Cypress Park Guaranty, and in addition to the other bases for his personal liability for these sums, Bruno is personally liable for the entire indebtedness due from the Cypress Park Borrower under the Cypress Park Loan Agreement and associated Loan Documents.

101.

IV.    **Waste – All Loans**

Alternatively, Section 3.02(a)(6) of the Loan Agreements provides that the applicable Borrower "shall be personally liable to the Lender for the repayment of the portion of the

Indebtedness equal to any loss or damage suffered by Lender as a result of . . . waste or abandonment of the mortgaged property."[8]

102.

Louisiana Stat. Ann. § 9:5382, provides that "the holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person wo, without the written consent of the mortgagee, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself or another, any tress, building, or other immovables covered by the mortgage.

103.

Here, each Borrower failed to maintain and repair its respective property, resulting in the diminution of the value of those properties.

104.

Fannie Mae performed property condition assessments on (1) the Forest Park Borrower's property on April 14, 2021; (2) the Cypress Park Borrower's property on April 13, 2021; (3) the Riverview Borrower's property on April 14, 2021; and (4) the Westbank Holding Borrower's property on April 14, 2021 (collectively, the "First PCAs"). The First PCAs revealed substantial life safety and deferred maintenance issues at each Borrower property, resulting in a diminished value of each Borrower property. The First PCAs additionally provided recommendations to remedy the deficiencies noted therein.

---

[8] Exhibit 1, p. 9; Exhibit 11, p. 9; Exhibit 21, p. 9; Exhibit 31, p.9.

105.

Fannie performed a second set of property condition assessments on (1) the Westbank Holdings Borrower's property on March 16, 2022; (2) the Cypress Park Borrower's property on March 16, 2022; (3) the Forest Park Borrower's property on March 17, 2022; and (4) the Riverview Borrower's property on April 15, 2022 (collectively, the "Second PCAs"). The Second PCAs demonstrated that none of the recommendations given in the First PCAs had been followed and further established that the issues identified in the First PCAs had become demonstrably worse, resulting in a further diminution in the value of each Borrower property.

106.

Pursuant to each Loan Agreement, each Borrower is personally liable on a full recourse basis for the diminishment in the value of its respective property due to its failure to adequately maintain and repair it. Consequently, pursuant to the Guarantees, Bruno is liable for this same amount.

107.

As of August 9, 2022, the total balance of the Cypress Park Loan is $2,869,466.50 (including attorney's fees to date, detailed below), consisting of the amounts detailed below:

| | |
|---|---|
| UPB at Payoff: | $2,292,622.72 |
| Interest at Payoff (03/01/20 - 08/31/22): | $254,365.22 |
| Yield Maintenance: | $62,141.53 |
| Default Interest (04/01/2020 - 08/08/2022): | $219,072.84 |
| Tax and Insurance Advance 03/2020: | $6,307.17 |

| | |
|---|---|
| Tax and Insurance Advance 06/2020: | $1,160.25 |
| Tax and Insurance Advance 12/2020 | $2,988.00 |
| Tax and Insurance Advance 02/2021 | $22,705.90 |
| Tax and Insurance Advance 03/2021: | $54,499.23 |
| Tax and Insurance Advance 12/2021: | $3,208.00 |
| Tax and Insurance Advance 05/2022: | $14,184.94 |
| Tax and Insurance Advance 06/2022: | $12,722.24 |
| Tax and Insurance Advance 07/2022: | $12,722.24 |
| Outstanding Fees: | $16,760.22 |
| Estimated UCC Termination & Release Fee: | $700.00 |
| Outstanding Legal Fees and Costs | $545,505.36 |
| Less Suspense Funds: | ($106,694.00) |
| **Total** | **$2,869,466.50** |

Additional late charges, interest, collection costs, including without limitation attorneys' fees and expenses, and other amounts due and owing pursuant to the terms of the Loan Documents may have accrued and continue to accrue.

108.

As of August 9, 2022, the total balance of the Westbank Holdings Loan is $28,668,265.32 (including attorney's fees to date, detailed below), consisting of the amounts detailed below:

| | |
|---|---|
| UPB at Payoff: | $21,859,822.03 |
| Interest at Payoff (03/01/2020 - 08/31/2022): | $2,708,383.37 |

37

| | |
|---|---|
| Yield Maintenance: | $2,038,079.69 |
| Default Interest (04/01/2020 - 08/08/2022): | $2,088,827.44 |
| Tax and Insurance Advance 09/2020: | $58,381.53 |
| Tax and Insurance Advance 02/2021: | $109,354.05 |
| Tax and Insurance Advance 03/2021: | $19,133.77 |
| Tax and Insurance Advance 09/2021: | $82,008.96 |
| Tax and Insurance Advance 11/2021: | $61,319.68 |
| Tax and Insurance Advance 12/2021: | $16,304.07 |
| Tax and Insurance Advance 01/2022: | $16,304.07 |
| Tax and Insurance Advance 02/2022: | $16,304.07 |
| Tax and Insurance Advance 03/2022: | $16,304.07 |
| Tax and Insurance Advance 04/2022: | $16,304.07 |
| Tax and Insurance Advance 05/2022: | $16,304.07 |
| Tax and Insurance Advance 06/2022: | $39,335.13 |
| Tax and Insurance Advance 07/2022: | $39,335.13 |
| Outstanding Fees: | $106,333.12 |
| Estimated UCC Termination & Release Fee: | $700.00 |
| Outstanding Legal Fees and Costs | $538,400.15 |
| Less Suspense Funds: | ($640,573.00) |
| **Total:** | **$28,668,265.32** |

Additional late charges, interest, collection costs, including without limitation attorneys' fees and expenses, and other amounts due and owing pursuant to the terms of the Loan Documents may have accrued and continue to accrue.

109.

As of August 9, 2022, the total balance of the Forest Park Loan is $2,194,043.30 (including

attorney's fees to date, detailed below), consisting of the amounts detailed below:

| | |
|---|---|
| UPB at Payoff: | $1,778,015.45 |
| Interest at Payoff (03/01/2020 - 08/31/2022): | $197,269.83 |
| Yield Maintenance: | $48,193.10 |
| Default Interest (04/01/2020 - 08/08/2022): | $169,899.24 |
| Tax and Insurance Advance 02/2021: | $4,918.45 |
| Tax and Insurance Advance 03/2021: | $34,904.41 |
| Tax and Insurance Advance 12/2021: | $802.00 |
| Tax and Insurance Advance 01/2022: | $1,760.00 |
| Tax and Insurance Advance 05/2022: | $10,113.21 |
| Tax and Insurance Advance 06/2022: | $8,852.07 |
| Tax and Insurance Advance 07/2022: | $8,852.07 |
| Outstanding Fees: | $13,910.72 |
| Estimated UCC Termination & Release Fee: | $700.00 |
| Outstanding Legal Fees and Costs | $503,905.02 |
| Less Suspense Funds: | ($84,147.25) |
| **Total**: | **$2,194,043.30** |

Additional late charges, interest, collection costs, including without limitation attorneys' fees and

expenses, and other amounts due and owing pursuant to the terms of the Loan Documents may

have accrued and continue to accrue.

110.

As of August 9, 2022, the total balance of the Riverview Loan is $2,104,899.46 (including attorney's fees to date, detailed below), consisting of the amounts detailed below:

| | |
|---|---:|
| UPB at Payoff: | $1,669,136.33 |
| Interest at Payoff (03/01/2020 - 08/31/2022): | $185,189.75 |
| Yield Maintenance: | $45,241.93 |
| Default Interest (04/01/2020 - 08/08/2022): | $159,495.24 |
| Tax and Insurance Advance 12/2020: | $24,705.33 |
| Tax and Insurance Advance 03/2021: | $35,892.12 |
| Tax and Insurance Advance 12/2021: | $14,971.73 |
| Tax and Insurance Advance 01/2022: | $14,598.11 |
| Tax and Insurance Advance 05/2022: | $9,543.26 |
| Tax and Insurance Advance 06/2022: | $8,511.85 |
| Tax and Insurance Advance 07/2022: | $8,511.85 |
| Outstanding Fees: | $15,079.46 |
| Estimated UCC Termination & Release Fee: | $700.00 |
| Outstanding Legal Fees and Costs: | $609,717.59 |
| Less Suspense Funds: | ($86,677.50) |
| **Total** | **$2,104,899.46** |

Additional late charges, interest, collection costs, including without limitation attorneys' fees and expenses, and other amounts due and owing pursuant to the terms of the Loan Documents may have accrued and continue to accrue.

**WHEREFORE**, considering the foregoing, Fannie Mae prays that, after due proceedings are had, there be judgment rendered in its favor and against Joshua Bruno for the full amount due under the Loans or for any other alternative liability plead in this Complaint, plus interest as it accrues pursuant to the Loan Documents, for all costs and attorneys' fees incurred by Fannie Mae in the enforcement of the Guarantees, and for all post-judgment interest as it accrues by law.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:     _/s/ Christopher M. Vitenas_____
Edward H. Arnold, III (Bar #18767)
Katie Dysart, T.A. (Bar #31449 )
Lacey E. Rochester (Bar #34733)
Christopher Vitenas (Bar # 36717)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana  70170
Telephone: (504) 566-5204
Facsimile: (504) 636-3904
Email: harnold@bakerdonelson.com
          kdysart@bakerdonelson.com
          lrochester@bakerdonelson.com
          cvitenas@bakerdonelson.com

**ATTORNEYS FOR FEDERAL NATIONAL
MORTGAGE ASSOCIATION D/B/A FANNIE
MAE**